## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Amy Gile *ex rel.* minor A.G., | |
| Plaintiff, | Civil No. 3:24-cv-01635 (VDO) |
| v. | |
| Town of Windham, *et al.*, | March 10, 2026 |
| Defendants. | |

## RULING ON PLAINTIFF'S MOTION
## TO MODIFY THE SCHEDULING ORDER [ECF No. 39]

The plaintiff, Amy Gile, has moved the Court to modify the scheduling order in this seventeen-month-old case to set new deadlines for pleading amendments, expert disclosures, completion of discovery, and dispositive motions.  (Pl.'s Mot. to Modify the Sched. Order, ECF No. 39, at 1) ("Motion").  The defendants, the Town of Windham and Windham Public Schools ("Defendants"), oppose the motion in virtually all respects.  (Defs.' Obj. to Pl.'s Mot. to Modify the Sched. Order, ECF No. 40, at 1) ("Objection").  The presiding District Judge, the Honorable Vernon D. Oliver, referred the Motion to the undersigned Magistrate Judge for resolution.  (Order of Referral, ECF No. 42.)  The Motion will be denied for the reasons set forth below.

## I.  BACKGROUND

Gile is the mother of "a Black bi-racial child who at all times relevant to [her first amended] complaint was a six [*sic*] grade student at the Charles H. Barrows Stem Academy in the Town of Windham, Connecticut."  (Am. Compl., ECF No. 3, ¶ 9.)  She alleges that her child "suffered peer to peer racial discrimination" from other students, and that the school and its officials were "deliberately indifferent to the racial discrimination perpetrated against [her] in violation of the

U.S. Constitution, Title VI of the Civil Rights Act of 1964 and laws of the State of Connecticut." (*Id.* ¶ 1.) She filed suit in this Court on October 11, 2024 (Compl., ECF No. 1), and she amended her complaint five days later. (Am. Compl., ECF No. 3.) Her amended complaint asserted four causes of action: (1) violations of Title VI, (2) intentional infliction of emotional distress, (3) negligence, and (4) negligent infliction of emotional distress. (*Id.* ¶¶ 46-78.) She sued the Charles H. Barrows Stem Academy ("CHBSA"), the Town of Windham, the Windham Public Schools, Principal Tim Maclure, Assistant Principal Stephanie Sawyer, and Superintendent Tracy Youngberg. (*See generally id.*)

Counsel appeared on behalf of the Defendants, CHBSA, and the three officials on November 4, 2024. (Notice of Appearance, ECF No. 10.) Under Local Rule 26(f), the parties were required to hold their initial planning conference by December 4, 2024, and to file their Rule 26(f) report by December 18, 2024. *See* D. Conn. L. Civ. R. 26(f) (stating that the conference shall take place "[w]ithin thirty days after the first appearance of a defendant," and that the report shall be filed "[w]ithin fourteen (14) days after the conference"). When December 18, 2024 came and went without a report, Judge Oliver noted the non-compliance on the docket but extended the parties' deadline to January 6, 2025 *sua sponte*. (26(f) Notice, ECF No. 15.) The parties filed their report on the last day of the extended period, and the report noted that they had held their Rule 26(f) conference only that day. (Rule 26(f) Rpt. of Parties, ECF No. 17, at 1.)[1] They reported no disagreements on scheduling, and accordingly they did not request a Rule 16 scheduling conference but instead proposed that the Court adopt their agreed deadlines for pleading amendments, fact and expert discovery, and dispositive motions. (*See generally id.*)

---

[1]     The report says that the parties held their conference "on January 6, ***2024***," but since this case was not even filed until October 11, 2024, the Court assumes that "2024" was a typographical error and that 2025 was intended.

In an order issued the next day, Judge Oliver gave the parties the schedule that they had requested. (Sched. Order, ECF No. 18.) Under that order, motions to amend the complaint were due by March 1, 2025, and motions to amend answers were due by April 1, 2025. (*Id.* at 1.) The parties were directed to disclose any expert opinions on issues as to which they bore the burden of proof by September 1, 2025, and to disclose expert opinions on issues as to which they did not bear the burden by November 1, 2025. (*Id.* at 2.) Importantly for this motion, the parties were given more than a year in which to complete all discovery. (*Id.* at 1) (stating that "[a]ll fact and expert discovery shall be completed (not propounded) by January 30, 2026"). The order further directed the parties to "take the first step to initiate any dispositive motion practice, including requesting a pre-filing conference for a motion for judgment on the pleadings or summary judgment, according to [Judge Oliver's] Pretrial Preferences by March 1, 2026." (*Id.* at 2.) It also directed the parties to file joint status reports on October 30, 2025 and February 6, 2026. (*Id.* at 2.) The first joint status report was to include "a detailed description of the discovery conducted up to the date of the report, and any significant discovery yet to be completed[,]" and the second was to contain a "certif[ication] that discovery is complete[.]" (*Id.*)

The Defendants, CHBSA, and the three school officials filed a partial motion to dismiss on March 14, 2025. (Mot. to Dismiss, ECF No. 23.) While the motion was pending, the parties failed to submit their first status report on time. (*See* Order, ECF No. 30.) Judge Oliver gave them another *sua sponte* extension (*id.*), but when they filed their report the following week, it did not include the required "detailed description of the discovery conducted up to the date of the report[.]" (Order, ECF No. 32; *see also* Jt. Status Rpt., ECF No. 31.) Additionally, the parties previewed that they would be requesting a sixty-day extension of the discovery deadline that they themselves had proposed, but they did not even attempt to explain why such an extension would be warranted.

(*Id.*)  Judge Oliver therefore rejected the report and directed the parties to file another one.  (Order, ECF No. 32.)

The parties filed a revised Joint Status Report three days later, and it revealed that they had conducted no discovery whatsoever in the ten months after their Rule 26(f) conference.  (*See* Jt. Status Rpt., ECF No. 33, at 1) (reporting that the only discovery undertaken as of November 13, 2025 was service of interrogatories and requests for production on November 7, 2025).  They claimed to be "awaiting the Court's ruling on Defendant's [*sic*] motion to dismiss to ascertain the contours of relevant discovery so as not to incur unnecessary time or attorney's fees."  (*Id.*)  But they acknowledged that, under the schedule they had induced Judge Oliver to adopt, "discovery has not been stayed" during the pendency of the motion to dismiss.  (*Id.*)  They pledged "to work cooperatively" to complete the depositions they were then anticipating, and although they again predicted that they would "need[] an [*sic*] sixty (60) day extension of time to complete discovery[,]" they did not explain why their year-long discovery period was insufficient.  (*Id.*)

Judge Oliver ruled on the motion to dismiss on January 27, 2026.  (Memo. & Order, ECF No. 34.)  He dismissed Gile's intentional infliction of emotional distress claim because her complaint did not plausibly allege the "extreme and outrageous conduct" element of that tort.  (*Id.* at 10-14.)  He likewise dismissed Gile's negligence and negligent infliction of emotional distress claims on governmental immunity grounds.  (*Id.* at 14-19.)  He also dismissed the Title VI claims against Principal Maclure, Assistant Principal Sawyer, and Superintendent Youngberg because "individuals are not personally liable under Title VI."  (*Id.* at 9.)  After the ruling, the only claims left in the case were the Title VI claims against the Town of Windham and the Windham Public Schools.  (*Id.* at 19.)

On February 6, 2026, the parties missed yet another deadline for a joint status report. (*See* Order, ECF No. 35.) Judge Oliver gave them another *sua sponte* extension, to February 17, 2026, but he noted on the docket that "this [was] not the first instance of the parties missing deadlines or otherwise not complying with the Court's orders in this case." (*Id.*) He admonished both parties in bold, capital letters, and he warned them "that financial sanctions *will* be imposed on the offending party at the next instance of non-compliance, absent a showing of good cause." (*Id.*) (emphasis in original).

On February 16, 2026, counsel for the parties called Judge Oliver's chambers in the middle of the deposition of Gile's child. (Order, ECF No. 36.) They "request[ed] guidance on whether defense counsel can explore the issue of emotional distress during the minor plaintiff's deposition," and they noted that Gile's "counsel objects to the line of questioning regarding the plaintiff's relationship with others based on relevance and harassment." (*Id.*) Judge Oliver responded on the docket that, "[w]hile these objections should be noted on the record," they "are not a basis for instructing a witness not to answer the question, as they do not involve the invocation of privilege." (*Id.*)

On February 17, 2026, the parties filed the joint status report that had originally been due eleven days before. (Jt. Status Rpt., ECF No. 37.) With respect to the pleadings, Gile reported that she "anticipate[d] moving to amend the complaint in light of the Court's ruling" on the motion to dismiss, and the Defendants stated that they "would object to any attempted amendment as untimely." (*Id.* at 1.) With respect to discovery, the parties wrote that they had exchanged responses and objections to each other's written requests on January 12, 2026 (*id.*), even though the requests had been served over two months before. They also stated that they had taken Gile's child's deposition after the January 30, 2026 close of discovery, "by agreement." (*Id.*) Gile added

that she "anticipate[d] filing a motion for extension of time related to discovery deadlines" to take the depositions of Principal Maclure, Assistant Principal Sawyer, and Superintendent Youngberg. (*Id.* at 1-2.)

Upon reviewing the report, Judge Oliver observed "a wholesale disregard for the Court's orders and, particularly, its Scheduling Order." (Order, ECF No. 38.) Reviewing the history of the case, he first noted that the parties had "missed the deadline for the October 30, 2025 status report . . . and then submitted a report that did not comply with the Court's directions[.]" (*Id.*) He also noted that although the parties' late-filed first status report referenced the possibility of a sixty-day extension, counsel never moved for one. (*Id.*) He then recounted how the parties had missed the February 6, 2026 deadline for their second status report, and how he had warned them that financial sanctions would be imposed "at the next instance of non-compliance." (*Id.*) The judge then explained the ways in which the parties' most recent report "reflect[ed] multiple, serious violations of the Court's Scheduling Order," including their evident decision to ignore the January 30, 2026 close of discovery, and their decision to take a deposition after the deadline "by agreement." (*Id.*) He observed that "[t]he parties have repeatedly ignored Court-ordered deadlines, failed to seek extensions despite acknowledging in advance that extensions might be necessary, and proceeded as though they could manage discovery on their own timetable without Court approval." (*Id.*) He imposed a $500.00 financial sanction on each side's attorney. (*Id.*)

Against this backdrop, Gile filed the instant motion for a modification of the scheduling order on February 23, 2026. (Motion at 1.) Beginning with the pleadings, she sought to extend her deadline for a motion for leave to amend her complaint by over a year, from March 1, 2025 to March 13, 2026. (*Id.*) She wrote that she "anticipates seeking leave to amend to assert a claim under 42 U.S.C. § 1983 for violation of the Equal Protection Clause," a claim that she asserted

would "aris[e] from the same nucleus of operative facts" as her Title VI claim.  (*Id.* at 6-7.)  She added that "[t]he anticipated amendment does not introduce new factual allegations but clarifies the legal framework through which those facts are adjudicated."  (*Id.* at 7.)

Gile also sought significant changes to the discovery schedule.  She proposed to extend her deadline for disclosing her experts by seven months, from September 1, 2025 to March 31, 2026.  (*Id.* at 1.)  She also proposed to extend the date for completion of all discovery from January 30, 2026 to May 29, 2026 (*id.*), apparently for the principal purpose of taking the depositions of the three school officials whom she had not deposed in the preceding year.  Finally, she asked the Court to move the deadline for initiating the dispositive motion process from March 1, 2026 to June 30, 2026.  (*Id.*)

The remaining Defendants objected to Gile's motion in virtually every respect.  (Objection at 1.)  While they did not "take a position regarding a 30-day extension of time to complete the depositions of Mr. Maclure, Ms. Sawyer, and Dr. Youngberg," they objected to "an extension of time to conduct any additional discovery beyond the three depositions noted above."  (*Id.*)  They also objected to any "extension of time for plaintiff to disclose experts," and any "extension of time for plaintiff to file a motion for leave to amend the pleadings."  (*Id.* at 1-2.)

Neither party requested oral argument (*see* Motion, Objection), and the Court deems it unnecessary to wait for the end of Gile's fourteen-day period to file a reply brief.  The Defendants' Objection merely stated their position in little more than half a page of text, without any citation to authority or any argument to which a reply brief might respond.  The Court therefore regards the motion as ripe for decision.

## II.    DISCUSSION

As noted above, Gile's motion seeks to modify scheduling order deadlines with respect to pleading amendments, fact and expert discovery, and dispositive motions.  Because the deadline for pleading amendments implicates Rule 15 as well as Rule 16, but the deadlines for discovery and dispositive motions do not, the Court will address them separately.

### A.    Pleading Amendments

Rule 15 of the Federal Rules of Civil Procedure provides that courts "should freely give leave" to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2).  "The policy behind this rule is that 'liberal amendment promotes judicial economy by making it possible to dispose of all contentions between parties in one lawsuit.'" *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 174 (S.D.N.Y. 2014) (quoting *Bilt-Rite Steel Buck Corp. v. Duncan's Welding & Corr. Equip., Inc.*, No. 90-cv-311 (TCO), 1990 WL 129970, at *1 (E.D.N.Y. Aug. 24, 1990)).  Consistent with this goal, leave to amend is ordinarily "liberally granted," but it may be denied for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice on the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  The decision whether to grant or deny leave to amend under Rule 15(a)(2) is within the trial court's discretion. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200-01 (2d Cir. 2007).

Yet when a party seeks to amend a pleading after its deadline for doing so has passed, Rule 16 also comes into play.  That rule states that scheduling orders "must limit the time to join other parties" and "amend the pleadings." Fed. R. Civ. P. 16(b)(3)(A).  Once it is set, a "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).  In the

District of Connecticut, "the 'good cause' standard requires 'a particularized showing that the schedule cannot reasonably be met, despite the diligence of the party seeking the modification, for reasons that were not reasonably foreseeable when the parties submitted their proposed case management plan.'" *Pal v. Cipolla*, No. 3:18-cv-00616 (MPS) (TOF), 2020 WL 564230, at *3 (D. Conn. Feb. 5, 2020) (quoting D. Conn. L. Civ. R. 16(b)); *see also This, LLC v. Jaccard Corp.*, No. 3:15-cv-01606 (JBA), 2016 WL 11582700, at *1 (D. Conn. Nov. 30, 2016). Put even more simply, under Rule 16, "[a] finding of 'good cause' depends on the diligence of the moving party." *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 267 (2d Cir. 2009) (quoting *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000)).

The Second Circuit's view of the relationship between Rules 15 and 16 has evolved over time. In *Parker*, the court held that once a scheduling order has entered, Rule 16 essentially trumps Rule 15. 204 F.3d at 340 (agreeing with courts in other circuits that had held that "the Rule 16(b) 'good cause' standard, rather than the more liberal standard of Rule 15(a), governs a motion to amend filed after the deadline a district court has set for the amendment of pleadings"). Three years later, however, the court held that after a scheduling order has been set, the good cause requirement of Rule 16(b) "must be balanced" against "the lenient standard" of Rule 15(a). *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003). And nearly four years after that, the court explained that Rule 16(b)'s diligence inquiry is "is not . . . the only consideration[;]" "[t]he district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 244 (2d Cir. 2007). Even *Kassner* underscored, however, that "the primary consideration is whether the moving party can demonstrate diligence." *Id*.

In this case, Gile plainly has not been diligent in seeking a pleading amendment. She says that she wants to assert a claim under Section 1983 for violations of her daughter's rights under the Equal Protection Clause of the Fourteenth Amendment (Motion at 6-7), but she has known since the very beginning of the case that constitutional claims were available to her, and indeed her initial complaint from 2024 alleged that "the defendants were deliberately indifferent to the racial discrimination perpetrated against [the child] in violation of the U.S. Constitution." (Compl., ECF No. 1, ¶ 1.) She notes that punitive and emotional distress damages are available under Section 1983 but not under Title VI (Motion at 6-7), and she adds that evidence of the child's emotional distress came out at the February 16, 2026 deposition. (*Id.* at 5) (recounting the dispute over the scope of the child's deposition, and claiming that the dispute "confirms that the factual record concerning psychological harm . . . is being actively developed"). But if this was intended as an argument that Gile did not know about the child's emotional distress until she was deposed, and therefore could not have pled a Section 1983 claim until now, it is entirely unpersuasive. Gile pled two emotional distress claims in her initial complaint (Compl., ECF No. 1), and she therefore clearly knew about that distress long before. Moreover, Judge Oliver did not dismiss those claims until after the first round of discovery requests were propounded and answered, and Gile therefore had a full opportunity to discover whatever information the Defendants had about her child's emotional distress. And even if it were true that Gile needed to depose her own child to find out the basis for a Section 1983 claim, she does not explain why the child's deposition could not have been taken much earlier in the year-long discovery period.[2]

---

[2]    Gile also notes the fact that Judge Oliver provided guidance to the parties on deposition objections on February 16, 2026. (Motion at 5; *see also* Order, ECF No. 36.) If this was intended to suggest that the guidance came as a surprise, and that receiving a surprising order after discovery closed is a valid basis for a late motion to amend the scheduling order, it is completely unpersuasive. Judge Oliver's guidance should have surprised no one, because any federal

Gile attempts to defend her dilatory conduct, but none of her attempts are persuasive under the applicable legal standards. She concedes with admirable candor that the Court's "inquiry is 'primarily focused upon the diligence of the movant'" (Motion at 4) (quoting *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)),[3] and she acknowledges that she bears the burden to prove diligence. (*Id.*) (citing *Parker*, 204 F.3d at 339-40). Having acknowledged the standard, however, she cannot bring herself to call her own conduct "diligent." (*See generally* Motion.) Instead, she says that "[t]he procedural posture" of the case "has materially evolved" since the Scheduling Order entered over a year ago (*id.* at 4), chiefly because Judge Oliver decided the motion to dismiss in the meantime, and because the Defendants produced allegedly-important documents for the first time on January 7, 2026. (*Id* at 4-5.) But these developments are not a substitute for diligence. For one thing, "waiting while motions remained pending before the Court does not suffice to show diligent efforts to update the complaint." *Hui Wang v. Omni Hotels Mgmt. Corp.*, No. 3:18-cv-2000 (VDO), 2025 WL 1782264, at *8 (D. Conn. June 27, 2025). For another, Gile has not explained why she did not even request the allegedly-important documents until over ten months into the discovery period. (*See* Jt. Status Rpt., ECF No. 33, at 1 (stating that Gile served her initial requests for production on November 7, 2025); Rule 26(f) Rpt., ECF No. 17, at 1 (stating that the parties held their Rule 26(f) conference on January 6, 2025, thus opening discovery under Rule 26(d)(1).) In sum, Gile acknowledges that diligence is the "primary" consideration in deciding whether to allow amendments after a deadline has passed (Motion at 3), but she has not shown it.

---

practitioner who had read Rule 30(c)(2) would know that "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2).

[3]     The quotation is inaccurate. The case actually reads: "Whether good cause exists turns on the 'diligence of the moving party.'" *Holmes*, 568 F.3d at 335 (quoting *Grochowski*, 318 F.3d at 86)).

Consideration of prejudice to the non-movant, as referenced in *Kassner*, does not change the analysis in this case. To be sure, if the Court were to permit the amendment, the prejudice to the Defendants would not be especially extreme. "[P]rejudice arises when the amendment would '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'" *Soroof Trading Dev. Co., Ltd. v. GE Microgen, Inc.*, 283 F.R.D. 142, 152 (S.D.N.Y. 2012) (quoting *Block v. First Blood Assoc.*, 988 F.2d 344, 350 (2d Cir. 1993)). If amendment were to be allowed, the Defendants would no doubt claim prejudice from having to raise any Rule 12 objections in a second motion to dismiss, and there is supportive authority on that point. *See, e.g., Levin v. Credit Suisse Inc.*, 577 F. App'x 85, 86 (2d Cir. 2014) (summary order) (affirming denial of leave to amend where plaintiff had not sought leave until after a motion to dismiss was fully briefed and decided). But precisely because a Section 1983 claim would "not introduce new factual allegations" beyond what Gile already pled (Motion at 7), allowing her to assert such a claim through a pleading amendment would probably not impose significant additional discovery costs. Considering all the relevant facts, the prejudice to the Defendants would be moderate rather than extreme.

Yet even considering this, and even considering "the lenient standard" of Rule 15(a), Gile's motion must be denied. As the Second Circuit has instructed, "the primary consideration" in deciding whether to amend a scheduling order to allow late pleading amendments "is whether the moving party can demonstrate diligence." *Kassner*, 496 F.3d at 244; *accord Presbyterian Church of Sudan*, 582 F.3d at 267 ("[A] finding of 'good cause' depends on the diligence of the moving party."). The presence or absence of prejudice is a factor to be considered, along with the liberality of Rule 15; but because diligence is the "primary" consideration, a profound failure of diligence

weighs heavily against such a motion, and moderate prejudice is not enough to tip the scales in its favor. *See, e.g., Conservation L. Found. v. All-Star Transp.*, No. 3:21-cv-201 (JBA) (TOF), 2022 WL 16706958, at *5 (D. Conn. Nov. 4, 2022) (denying motion for leave to amend, even though prejudice would not have been "extreme" if amendment had been allowed, because plaintiff dallied for nine months; under those circumstances, "the lack of diligence predominates"); *Karazin v. Wright Med. Tech.*, No. 3:17-cv-823 (JBA), 2018 WL 6067235, at *1-2 (D. Conn. Nov. 19, 2018) (rejecting plaintiff's lack-of-prejudice arguments when he failed to cure defects in his complaint after warning). In this case, the failure of diligence is profound, and it predominates over any lack of prejudice to the Defendants.

### B.    Discovery and Dispositive Motions

Gile also seeks to extend the deadlines for disclosing experts, completing discovery, and filing dispositive motions. (Motion at 1.) Because the question of whether she is entitled to such an order is unaffected by Rule 15, the analysis is slightly different from the analysis in Section II.A above. But even when viewing things exclusively through the lens of Rule 16, the linchpin of the analysis is still diligence, and Gile has not shown it.

Under Rule 16, the Court must set deadlines to "complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). Once these deadlines are set, they can be modified "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). As noted above, the "good cause" standard requires "a particularized showing that the schedule cannot reasonably be met, despite the diligence of the party seeking the modification, for reasons that were not reasonably foreseeable when the parties submitted their proposed case management plan." *Pal,* 2020 WL 564230, at *3 (quoting D. Conn. L. Civ. R. 16(b)); *see also This, LLC*, 2016 WL 11582700, at *1. In the discovery context as in the pleading amendment context, "[a] finding of good cause depends

13

on the diligence of the moving party." *Harnage v. Brennan*, No. 3:16-cv-1659 (AWT) (SALM),
2018 WL 2128379, at *4 (D. Conn. May 9, 2018) (quoting *Parker*, 204 F.3d at 340).

Gile has been no more diligent about conducting discovery than she has been about
pursuing pleading amendments. She did not even begin to take discovery until November 7, 2025,
over ten months after discovery had opened. (*See* Jt. Status Rpt., ECF No. 33, at 1 (stating that
Gile served her initial requests for production on November 7, 2025); Rule 26(f) Rpt., ECF No.
17, at 1 (stating that the parties held their Rule 26(f) conference on January 6, 2025).) So far as
her motion discloses, she made no efforts to obtain any expert witnesses before her deadline passed
for disclosing them. (*See generally* Motion.) And although she twice predicted that she would
seek an extension (Jt. Status Rpt., ECF No. 33, at 2; Jt. Status Rpt., ECF No. 37, at 1-2), she never
actually moved for one until after the discovery period had closed. This is not diligence. *See
Namin v. Broadridge Fin. Sols., Inc.*, No. 3:22-cv-749 (RNC) (TOF), 2023 WL 10802679, at *2
(D. Conn. July 17, 2023) (denying motion to extend discovery schedule where plaintiff conducted
no discovery for three months, and took no depositions for nine months); *Shemendera v. First
Niagara Bank, N.A.*, 288 F.R.D. 251, 253 (W.D.N.Y. 2012) ("[W]here (as in this case) a party has
done little or nothing to schedule the depositions until the deadline arrives, 'good cause' does not
exist.").

There are, of course, countervailing factors to be considered—although there is some
disagreement among courts in the Second Circuit on exactly what those factors are. Some courts
have identified a longer list of countervailing considerations in the discovery context than in the
pleading amendment context. In the frequently-cited case of *Casagrande v. Norm Bloom & Son,
LLC*, for example, Judge Haight extracted five such considerations from *Kassner* and other
authorities: "(1) the imminence of trial; (2) whether the request is opposed; (3) prejudice to the

14

nonmoving party; (4) whether the moving party foresaw the need for additional discovery, in light of the discovery deadline set by the court; and (5) whether further discovery is likely to lead to relevant evidence." No. 3:11-cv-1918 (CSH), 2014 WL 5817562, at *2 (D. Conn. Nov. 10, 2014) (quoting *Jeannite v. City of New York Dep't of Bldgs.*, No. 09-cv-3464 (DAB) (KNF), 2010 WL 2542050, at *2 (S.D.N.Y. June 21, 2010). Other courts read *Kassner* to say only that "even where the moving party has been diligent, a court may nonetheless deny a late motion . . . when it would prejudice the non-moving party." *Woodworth v. Erie Ins. Co.*, No. 05-cv-6344 (CJS), 2009 WL 3671930, at *3 (W.D.N.Y. Oct. 29, 2009). These courts do "not understand . . . *Kassner* to mean that where the moving party has *not been diligent,* a court [may] nonetheless grant the motion if it would not prejudice the non-moving party." *Id.* (emphasis in original)*; accord Shemendera*, 288 F.R.D. at 252-53. In any event, the movant's diligence is, at a minimum, the "primary" area of inquiry. *Kassner*, 496 F.3d at 244. "[T]he moving party must show why it could not have completed the necessary discovery within the time frame established under the existing scheduling order." *Baburam v. Fed. Express Corp.*, 318 F.R.D. 5, 8 (E.D.N.Y. 2016) (citing *Carlson v. Geneva City Sch. Dist.*, 277 F.R.D. 90, 95 (W.D.N.Y. 2011)).

Even considering the *Casagrande* factors, Gile is not entitled to the order that she seeks. To be sure, trial is not imminent. But her request is opposed, and there would be some prejudice to the Defendants as noted above. Moreover, Gile clearly could have foreseen the need for additional discovery long ago. At the time she filed her case, Principal Maclure, Assistant Principal Sawyer, and Superintendent Youngberg were named parties, and the need to depose them was no less obvious then than it is now. Gile's lack of diligence in the face of a foreseeable need for additional discovery outweighs anything that could be said for her motion under the other *Casagrande* factors. *See Namin*, 2023 WL 10802679, at *2-3 (holding that the *Casagrande* factors

did not overcome a profound lack of diligence, and observing that "[p]arties who fail to use the early months of a year-long discovery period . . . do so at their peril").

## III.    CONCLUSION

For the foregoing reasons, the motion of the plaintiff, Amy Gile *ex rel.* minor A.G., to modify the scheduling order is **DENIED.**

This is not a recommended ruling. It is a ruling by a Magistrate Judge on "nondispositive motions," D. Conn. L. Civ. R. 72.1(C)(2), and as such it is reviewable pursuant to the "clearly erroneous or contrary to law" statutory standard of review.[4] D. Conn. L. Civ. R. 72.2(b). It is an order of the Court unless reversed or modified upon timely objection under Local Rule 72.2(a).

So ordered this 10th day of March, 20262, at Hartford, Connecticut.

*/s/ Thomas O. Farrish*
_____
Hon. Thomas O. Farrish
United States Magistrate Judge

---

[4]    This is so, even though my ruling touches upon Gile's ability to amend her complaint. "[T]he weight of authority within this Circuit classifies a motion to amend a pleading as [a] non-dispositive" matter that can be ruled upon by a Magistrate Judge. *Rivers v. N.Y.C. Hous. Auth.*, No. 11-cv-5065 (KAM) (MDG), 2014 WL 12829494, at *3 (E.D.N.Y. Nov. 17, 2014). "Although the Second Circuit has not yet ruled upon the issue," it "has stated in dictum and in an unpublished opinion that motions to amend are non-dispositive and require a 'clearly erroneous and contrary to law' standard of review." *Id.* (citing *Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007) and *Kilcullen v. N.Y State Dep't of Transp.*, 55 F. App'x 583, 584 (2d Cir. 2003) (summary order)); *but see Gutierrez v. Miller*, No. 1:17-cv-09570 (PGG) (SDA), 2019 WL 13162439, at *17 n.20 (S.D.N.Y. Apr. 17, 2019) (issuing a report and recommendation "out of an abundance of caution" where a ruling would be "dispositive of the two additional claims that Petitioner seeks to assert" in the amended pleading). In *Sokol Holdings, Inc. v. BMB Munai, Inc.*, for example, the District Judge treated the Magistrate Judge's denial of a motion for leave to amend as a non-dispositive decision because it was "based on a procedural violation – to wit, non-compliance with a scheduling order without a showing of 'good cause' – rather than a substantive determination of the merits of Plaintiffs' claims." No. 05-cv-3749 (KMW) (DCF), 2009 WL 3467756, at *4 (S.D.N.Y. Oct. 28, 2009). The same is true here.